312-344. Please follow the state of the law and act with the right of your hands in accordance with the statute of limitations of the United States Constitution. Defendant, Brian Kohut. Following the jury trial, Mr. Stennis was convicted of possession with intent to deliver cannabis and was sentenced to 19 years imprisonment. On appeal here, he raises four issues. Whether the circuit court erroneously denied his motion to suppress, whether the circuit court erroneously allowed a prior conviction in order to show intent to deliver in this case where intent was really a foregone conclusion. And then two credit issues. I want to talk about that second issue first. Absolutely. If you do it any way you want. Sure. The circuit court, as I just stated, the circuit court allowed a prior conviction in to show Mr. Stennis' intent to deliver. His prior conviction was, I believe, seven years previously. It was a possession of a controlled substance with intent to deliver. However, it allowed the conviction in to prove intent in this case. However, intent was a foregone conclusion. Whoever possessed these drugs clearly intended to distribute them, correct? I think that's pretty obvious from the facts of this case, Your Honor. There were ten one-pound bags of cannabis. They were all separate. They were separate bags. Right next to it was a bag containing a scale, containing a food saver sealer bag, along with bags for that food saver sealer, and individual Ziploc container bags. There was no smoking paraphernalia throughout the entire residence. The state also brought in expert testimony indicating that whoever possessed the cannabis did so with intent to deliver. In closing arguments, the assistant state attorney admitted that prior conviction, I'm sorry, that the intent to deliver was a foregone conclusion, the evidence was overwhelming, and on appeal here, the state admits that the prior conviction was merely cumulative in their opening brief. That's page 12 of 13. Furthermore, the circuit court who allowed this prior conviction in, there were two trials. One trial resulted in a hung jury. The other trial resulted in his conviction. The circuit court heard all of this evidence in the first trial. He heard all of this remarkably extensive indicia of intent to deliver after the first trial. And after the first trial, a juror even came forward and said, you know, I was really troubled by this prior conviction because I found that he had done it before, so he probably would have done it again. And once, I mean if you're going to look at this prior crimes evidence, I mean you're supposed to do a legal relevance analysis, right? In other words, is the probative value, whatever probative value it might have, is it outweighed by any undue unfair prejudicial fact, right? Absolutely, that's the test, John. And here, it had really no probative value. That's the problem here. It only served the prejudice of Mr. Stennis. So therefore, he requests that this court reverse his conviction and remand the matter for a new trial on that issue. Then turning just briefly to the first issue, actually a confidential informant approached Officer Brent Lawrence of the Peoria Police Department and said that he saw what he suspected was cannabis at Mr. Stennis' house. Based on this information, the officer drafted a complaint, drafted the informant affidavit, went to the judge, saw a search warrant, got a warrant, and the same officer effectuated this warrant and recovered the cannabis here. Therefore, Officer Lawrence did not have probable cause to conduct the search that he conducted. The court did not suppress the evidence because it found that Officer Lawrence acted in good faith. This ruling was erroneous. And the main thing here, Your Honor, is that the same officer conducted the investigation, drafted the complaints, drafted the affidavits, and actually executed the warrant. So the question here is whether Officer Lawrence knew or should have known that he did not have probable cause to effectuate the search. And at issue here, Officer Lawrence has the same knowledge that was given to the judge here. The same reason why the warrant was quashed applies to Officer Lawrence. The warrant was quashed because there was no indicia that the confidential informant knew what cannabis looked like. But that was after the search, right? The quashing of the warrant. That's correct, Your Honor. And when he went there, he knew that a judge had signed it. Well, yes, but before that, when he was conducting his investigation, he spoke to the confidential informant. The confidential informant told this police officer that he saw what he suspected was cannabis in Mr. Stennis' apartment. But the officer said, okay, fine, good enough for me. He never asked the informant if he knew what cannabis looked like. The police are charged with knowledge of the law. Didn't everybody know what cannabis looked like? I don't know, not necessarily. Justice McDay doesn't. There's no indication the confidential informant knew that this substance was in fact cannabis. And all the police officer had to do here was ask. But he didn't. He didn't do anything. And this is the first time he had ever met this informant. He had never spoken to him before. And he doesn't do a background check. If he does a background check and he sees this informant has prior convictions for possession of cannabis, then yeah, he has an idea of what cannabis looks like. But he never asked the question, do you know what cannabis looks like? And I don't think everybody does know what cannabis looks like. Particularly when it's tucked away in a bag in a closet on the floor. There's no indication this confidential informant looked at the cannabis or actually handled the cannabis. So he's not right up close to it. He doesn't smell it. It could be anything for all the police officer knew. And as I stated, I'm sorry, Your Honor. How long had this officer been with the force? He'd been with the force, I believe it was about ten years at the time of trial and it was about seven years at the time that the search was conducted. But he had been for five years with the Peoria Metropolitan Enforcement Group at the time he executed this warrant. And that's the Specific Narcotics Investigation Unit. He should have known that he had to ask this confidential informant, hey, how do you know it was cannabis? But he never did that. Instead he drafted a complaint, he drafted a confidential informant's affidavit, and in that affidavit he said that the confidential informant said it was purported to be cannabis. In other words, somebody told him it was cannabis. Do you know where they get these confidential informants? They're working off charges, typically. See, they don't go get them out of the Christian Science Reading Room. These people are usually pinched for other drug arrests and stuff like that, and that's why they can get into this drug dealer's house. So it's not like you're going to grade school or something and picking up some kid out of civics class and taking him out there and saying go in there and see if you see any dope. I mean, wouldn't it be reasonable for him to assume that this guy is savvy with drugs? I mean, that's who these people are. I would have to answer no. Not in this case, because this is the first time he ever met the person. The first time he ever met the confidential informant. The informant had never worked with the Peoria Police Department before. He never acted as a confidential informant, and he does absolutely no background check. He has no idea who this informant is. It could be anybody. He doesn't ask the informant, why were you there? The sole substance of his relationship with Mr. Stenitz is that they had hung out sometime before. He could have been an old high school buddy. I mean, typically, you're correct. There's somebody who's working off charges, working off their own charges. They have a mile-long rap sheet, for lack of a better term. But we don't know that in this case, because there was no investigation of that informant. Then there was no corroboration of any illegal activity. He never did any surveillance of Mr. Stenitz's house. The only thing he did was identify Mr. Stenitz and the apartment number where he lived at. That was it. I have a conceptual problem with using good faith as a basis for accepting the results of the search in this case. Typically, I think, most of the cases that I've seen, when you have an officer saying, I executed the warrant in good faith, it's a different officer than the one who provided the factual basis for the warrant. And here you have somebody saying, I relied on this warrant in good faith that I presumptively knew was not thoroughly documented. Absolutely, Your Honor. And that's why this case is different than a lot of the typical Leon cases. Because it's not just an officer picking up the warrant and just looking at it, okay, the judge signed off on this, looks okay to me. This is the same officer who conducted the investigation, who spoke to the confidential informant, and not only spoke to the confidential informant, but actually drafted his affidavit. And that's important, because he misstated the facts. The confidential informant told him that he said he saw suspected cannabis when the officer wrote in his affidavit that it was purported to the confidential informant that it was cannabis. Somebody told him. And if he would have told the judge exactly what the confidential informant told him, that the CI only suspected that it was cannabis, the judge probably wouldn't have granted this warrant. He would have asked the officer, okay, I need some more information here. Go find out if this guy knows what cannabis looks like. Man or woman, I have no idea who it was. So who bears the responsibility for making sure that a warrant is factually based? Is it the police officer or is it the court? It's the police officer. He's the one that does the investigation, brings forth the facts to the judge, and then the judge makes a legal conclusion based on these facts that the officer has put together and actually written in this case. And as I stated, there was no corroborating evidence. The officer did no surveillance. He just looked at the... he was able to... he found the confidential informant, was able to identify the person and the place. That was the innocuous information available to anyone. That's the sum and substance of his corroboratory actions in this case. Was there an allegation that the officer was lying in the application for the warrant? There was as well. In his complaint for warrant, he attributed the Mr. Stennis address to the Secretary of State's office. The Secretary of State's office did not have that address for Mr. Stennis. They had a completely different address. And then the state comes back with evidence showing that there's some lead search around the time that this... that the warrant was executed. But this lead search, the problem with that is the lead search says right on it. You know, don't... I'm sorry. The lead search says right on it. Do not rely on this information to search a person's house. And the lead search did not contain his apartment number. So he could not attribute that information to either a lead search or a Secretary of State's office. But was there any allegation that he was lying about what it was that the informant stated to him or what he learned from the informant, the CI? Yeah, I'm sorry, Your Honor. Was there any allegation that the police lied to the magistrate about what it was the informant saw or told him he saw? That was not an allegation that was hashed out before the circuit court. It was, however, in Mr. Stennis' motion to reconsider. The circuit court originally denied the motion to express. Yeah, Mr. Stennis came back with a motion to reconsider. The circuit court's denial. And the circuit court allowed the motion. In that motion to reconsider, in the body of that motion to reconsider, it indicates that there's no indication that this officer knew that that confidential informant knew what Candace looked like. So it should be suppressed. Or it could not be found to be good faith based on those statements. I don't think there was an actual... Thank you. I think that falsehood is totally related to that Secretary of State search. Well, I guess where I'm going is some judge believed that there was enough in the application for him to sign a warrant, right? Yes. And so it's bad faith for the police not to be smarter than the judge that signed the warrant? I mean, it's not a question of bad faith, Your Honor. The defendant doesn't have to show bad faith. In fact, it's the burden on the state to show good faith. So it's... But it's the police officer, as Justin McDade pointed out, it's the police officer who's gathering the facts. And he's putting them in this warrant. And that's the judge saying, okay, based on these facts, does he have probable cause to make this search? Here, the judge signed off on the warrant, but it was later passed. It was erroneously he signed off on the warrant. All right. Based on the totality of the circumstances in this case, Officer Lawrence knew or should have known that he did not have probable cause to conduct this search. Thank you, Your Honor. Thank you, Mr. Clubhouse. Mr. Hanson. Good afternoon, Your Honors. Good afternoon. Counsel, I'll take the issues the same way my opponent did, starting with the second issue first, as to the other crimes evidence. You know, the judge had a hearing thereon. He used his discretion. The standard here, of course, is abuse of discretion. He told the jury contemporaneously, and then in a later instruction, this only went to the defendant's intent. The law isn't in my brief with regard to the judge being allowed to use his discretion here. The defendant claimed the drugs in his home belonged to someone else. That's impliedly denying his intent to distribute those. Thus, this evidence… It's denying his intent to possess them, right? It's denying his intent to possess, and the Perkins and Spires cases also say it's denying his intent to provide them, distribute them also. The two cases I cite in my brief, both Spires and Perkins. And they said the judge is… If I've answered your question, I don't mean to be overly terse with you. The judge is in the best position to take into account the prejudicial impact, regardless, relative to the probative value. And the judge here was extremely conscientious. First, he read the case law. Then he considered the appropriate factors. Then he exercised his discretion, but gave that contemporaneous limiting instruction, which also appeared later in the regular jury instructions, that the other crime's evidence was only regarding intent, and not to show the defendant was guilty of this crime because he was earlier guilty. Let me just ask you. With this evidence, with the amount of dope and the way it's packaged and whatever, do you think any reasonable person or jury would have thought that whoever possessed it was possessing it for personal use? Probably not, Your Honor, but two points. That certainly helps my harmless error evidence, saying it was merely cumulative under the Enro Latinus G case. Yeah, but the conviction, the fact that they just told the defendant, by the way, he's a convicted drug dealer, is not cumulative with any other evidence. I'm sorry, I don't get it. The prior convictions just told the jury that the man's a convicted drug dealer. That's not cumulative. Of what evidence is that cumulative? That's the whole point. It's harmless in the sense that there was overwhelming evidence that this guy was intending to deliver here, so it's cumulative to the extent it went to his intent. Well, but it's only, I suppose, if once you get past the issue of possession, which was the real issue of the trial, because they knew whoever possessed it intended to distribute it, right? Right, but the other crimes evidence, specifically by instruction of the judge, went to the question of intent, and the question of intent was overwhelmingly established by the big amount, the paraphernalia of sale there and no smoking paraphernalia. Do you think once you tell the jury that the guy, by the way, this fellow who says he doesn't have this dope, he's a convicted drug dealer, do you think they really put that out of their mind when they're deciding whether he possessed it, whether he's in possession of it or not? Yeah, you know, first of all, it says the jury is presumed strongly to follow the judge's instructions. That's the Taylor case, and I think, sure, all the time we have juries instructed not to take other crimes evidence into account. That's just, and it is really, in my humble opinion, kind of a misnomer when, you know, the example frequently given is saying, don't think about a pink elephant. Well, now every one of us automatically have in our mind a pink elephant. No question about that, but although you think about it, you can be told, don't take that into account. In other words, in the number of elephants you see in this picture, don't take the pink elephant into account. You can be told, although you intellectually have it within your consciousness. Well, let's look at it another way. In light of the, what was the probative value of, from the state standpoint, what was the probative value of this evidence for purposes of intent to deliver when the evidence of intent to deliver was a foregone conclusion? But the defense had a good lawyer, and the judge took that into account because he brought up all sorts of stuff that the judge used in deciding this other crimes evidence could come in. He noted the defense counsel asked the officers if they knew the defendant from prior drug dealing and whether the cops, you know, tried to gather information regarding people engaged in drug activity. He noted the first cop was asked if he was familiar with the defendant's name. This is all by the defense lawyer. And if the police... At trial? Yes, at trial. Yes. And that's in my brief too, Judge. Was that at trial or the motion was suppressed?  I'm pretty sure of that, Judge. The defense lawyer asked if the police shared information regarding drug dealers. He noticed one cop was asked if he knew the players on the street referring to drug dealers. I'm really pretty sure, Judge, this was asked by defense counsel at trial. This was the defense raising intent as an issue, so the prior conviction was relevant and admissible. And, Judge, also I point out that that prior conviction, the state's attorney did not rely on it. One, I owed it in his argument. It was hardly overused. The fact that the state's attorney did argue that the question of intent was an easy one, given the other evidence, was just a reasonable and expected argument. That doesn't detract from the fact here that the prior conviction went to intent. That concludes my comments on that issue, unless your honors have any questions thereon. Turning to the first issue, it's really bad policy, I think, to encourage the police officer in a case like this to second-guess the judge's finding of probable cause. Officer Lawrence was always in good faith, and all this is in the brief, the standards of objective reasonableness. He took the informant to the judge. The judge issued the warrant. It's really terrible to accuse him of bad faith on everything that was done here. First of all, we'd ask you to consider that Skinner case. It's in my brief, where a search warrant, just to show how the search warrant was issued based on what the cop could believe was probable cause. The search warrant issued was based on the complaint and affidavit of one with an alias that he had reasonable grounds to believe the defendant possessed and there was cocaine. That person, as here, came before the judge. You know, the affiant only has to establish probable cause, hardly proof beyond a reasonable doubt. Skinner distinguished cases where there were affidavits from officers based on information from informants where the informant was at issue, because here, that informant, as in our case, was before the judge. In Skinner, the complaint for warrant was executed by the affiant, a private citizen, based on his observations and knowledge. Here, the complaint was executed by the officer based on the private citizen's affidavit and the private citizen, the informant that John Doe was present. Whereas here, the informant is the affiant to the complaint and states facts he observed, you don't need to show his reliability. That's the Skinner case again. The judge decides his credibility. Again, Skinner. When, as here, the informant comes before the judge and is on oath, the judge assesses his credibility, ergo additional information regarding his reliability and corroboration by the cops was unnecessary. That's the Lyons case, and these are in my brief. I never will cite a case to you. I didn't put it in my brief. Were these cases similar in the actual context that the judge just said to the CI, your name is whatever, is this your signature, and then said, okay. I don't specifically recall, Your Honor, but I think probably in those cases there was a bit more said than here. I want to be fair with you on that. You'll find me out on it anyway, so I might as well help my credibility by saying that at the outset. I presume you'll look. The officer had no reason not to rely on the incident warrant. Two, that informant, based on the Skinner situation where probable cause was found. Two, the informant had no reason to lie. He was working with the police to lessen a friend's charges. False information would not help that. The cop told him he was facing perjury charges if he lied. No reason for the cop to question the informant's statement here. Even if it was found there was no probable cause, the officer relied on it in good faith. And as noted in my brief, in considering the officer's good faith, and that's the whole nub here, and I really think it's a bad accusation against this officer, the court looks to the information known to the cop and told to the judge, even beyond the informant's affidavit. That's the Frazier case. Here the cop added much information to the informant's affidavit. Indeed, see the appendix to the defendant's brief. The informant's affidavit and the officer's form complaint are both in there, right next to each other at the back. Each of them is one page. The cop's complaint is considerably lengthier. He interviewed the informant. The informant said the defendant had multiple pounds of cannabis at the subject address, not the purported, whatever argument, which I think is a very weak one anyway. The informant saw multiple pounds of cannabis inside the defendant's apartment, which he said was number 58, which indeed it was. The informant identified a photograph of the defendant. The informant said in his own affidavit he saw a large amount of a green leafy plant-like material purported to be cannabis. Judge, I think the argument that the use of the word purported somehow weakens something. It's just a word chosen. It's meaningless. He's saying, I think that was cannabis, to go, as the defendant does, off on a criticism of that use of the word purported. My humble opinion is unreasonable. There was simply never here any challenge to the credibility of the informant. The officer sent a check to the defendant through the secretary of state, and he was obviously wrong about that. It was later shown to be leads. Showed the defendant was at this address where the defendant said, which the officer confirmed by going there and seeing the defendant's name and apartment number on a registry at the building. Later, still more, that the officer had to support his good faith. At the hearing on the motion to disclose the informant, the officer said the informant told him he had been at this address within the last 72 hours and saw cannabis. I mean, you know, your honor, we can't get over the fact, the search warrant was eventually suppressed, but we're talking about the officer's good faith here. The informant tells him within the last 72 hours I'm there and saw cannabis. The informant said he hung out with the defendant. The informant said the purported cannabis was in a black duffel bag in the defendant's bedroom, seeming to be packaged for sale. Man, there's getting to be a lot of information here. And if not enough information for probable cause, but that's not the fight we're here on today, it certainly seems to me to be an awful lot of information supporting the cop's good faith. This was extra information of the officer's good faith, which the court had earlier found. And, of course, later evidence can be considered on that question. I cite the Melbach and Cavallaro cases for that point. The decision as here to seek an informant is prima facie evidence of good faith. So prima facie there's evidence of good faith. That's the Bryant case. Then there's more authority in Bryant. Negligence, or being able to do more before seeking a warrant, has nothing to do with good faith. We're not talking about screw-ups. We're talking about bad faith. And a screw-up isn't bad faith. Exclusionary rule is to deter police from getting warrants on false information, not to deter police from obtaining a warrant on correct information provided in a slipshod manner. That's the Bryant case again. And nobody here says any of the information is incorrect. The officer was simply mistaken on the rather minor point of how he verified the defendant's address. He said it was Secretary of State. He went to the apartment site, saw the defendant's name, shortly before he went to the judge for the warrant. Then the Leeds document showed it was someone from the Peoria Department who checked there to find the defendant this address. Officer Lawrence, again showing his honesty, could not recall if he was the one who'd done the Leeds check. The reasonable inference here seems to be, yeah, I verified the defendant's address through Secretary of State. Whoops, I screwed up. It was Leeds. But geez, how many cases has he been on? He verified his address through Entity A rather than Entity B. This was for the judge. The judge below found the cop credible. There's no indication he wasn't. Thank you. All told, Lawrence and the police department properly checked for information of the defendant's address. And the judge noted that and found the police department had acted in good faith. The defendant cites cases in his brief where, unlike here, the informant did not come before the judge. Here the informant did. Whether the officer spoke to the informant saying purported cannabis or suspected cannabis is really form over substance. At that point, is it purported until it's been, that's police jargon. Use bigger words than are necessary. And it hasn't been tested yet until somebody tested it. We don't know to an absolute moral certainty. But then going off that, with all due respect, Your Honor, and if I were on their side, I suppose I'd make the argument too, but I think it's an extremely weak one. In all reason and logic, this substance is extremely unlikely to have been oregano, parsley, spinach, or lettuce, as the defendant makes claim in his brief it could have been. Who has that kind of quantity sitting on a table, packaged for delivery of oregano, parsley, spinach, or lettuce? Again, the question here is the officer's good faith, not some hyper-technicality as to whether he specifically said cannabis rather than purported cannabis or green leafy substance. Look to the sworn complaint of the officer and the sworn affidavit of the informant. The question is simply one of good faith, not perfection, or not even a good job. It's just whether he was in good faith in executing the search warrant. I apologize for my redundancy, but I really believe that, and I'm hoping by beating the matter to death I'm really making my point. There's no real question here of the informant's credibility. And another point the defendant makes, there's no particular matter that the judge met the informant in a car rather than the court. That often happens, Your Honor, and he's still acting as a judge. The point is you go before a judge, not that you go into a given room. Thank you. Thank you, Your Honor. Thank you, Mr. Hanson. Mr. Cohut, any rebuttal? Please declare. I'd like to start off by answering a question that Justice O'Brien posed, and that is the Skinner and Lucas case are both, Skinner and Lyons, I apologize, are both distinguishable because those were probable cause cases. The informant did appear before the judge in those cases. There was some colloquy between the two parties. Here, Officer Lawrence testified that the judge said nothing other than he read the complaint, gave the oath to the confidential informant, and witnessed his signature. And again, this was done in the car, it was done in the police officer's car, it was in the parking lot of a movie rental place, I believe. It was not in a solemnized setting of a courtroom. Furthermore, it's just one factor to take into account when you're looking at the totality of the circumstances here, whether the confidential informant actually appeared before the judge. And as I stated previously, those are probable cause cases. This is a good faith Lyons case. So the judge's determination of the credibility of this confidential informant really is irrelevant. What's relevant here is the police office determination of the confidential informant's credibility. Because we're looking at whether Officer Lawrence knew or should have known that he did not have probable cause to conduct this search. And this is because he didn't ask the CI, do you know what cannabis looks like? No. Because the warrant was quashed, we had the same officer conducting the investigation, the same officer drafting the complaint and the affidavits for search warrant, and then executing the search warrant. Since the warrant was quashed, he did not have probable cause to conduct that search. Because? Because the warrant was quashed. What? Because the warrant was quashed. But that was afterwards. Why should he... But I understand you're arguing to me the reason he didn't have probable cause was because when the CI came out and said there was cannabis in there, he didn't say, do you know what cannabis looks like? Well, the reason why, and that's why the warrant was quashed, subsequently quashed. So he did not have... The warrant was invalid. He did not have probable cause to conduct that search. And so the question becomes whether he knew or should have known that he did not have probable cause to conduct that search. And based on his discussion with... It's not a determination of whether the judge found that confidential informant credible or reliable. It's whether the police officer believed that that confidential informant was reliable. But Mr. Stennis maintains that here he could not. He just met the informant one time. It was the first time he ever met him. He never did any kind of background check. This confidential informant could have had by prior perjury convictions. We just don't know. We don't know because the officer never took the steps to verify the confidential informant's reliability. And as to the distinction between the purported and suspected, it is police jargon. But he's going before a judge with an affidavit for a search warrant. He needs to put in the facts here. So if he just would have stated exactly what the confidential informant told him, as counsel states, I saw cannabis in such-and-such apartment on such-and-such date. Then he should have put that in the warrant. I saw cannabis in such-and-such apartment on such-and-such date. And then the judge could have asked. Then the onus would have been placed on the judge to say, hey, do you know what cannabis looks like? And he could have done that in the car here. But that didn't happen because Officer Lawrence changed the facts in the affidavit. He changed the language the confidential informant used when he was discussing what he actually saw in this case. From cannabis to purported cannabis. What was purported to be cannabis. And it's important because it's not purported cannabis. It's not suspected cannabis. It's purported to be cannabis. Somebody told him it was cannabis. That's the reading of the language, purported to be, is somebody told him it was cannabis. And that was not the case. Well, I mean, isn't legally it's always alleged cannabis until somebody, some chemist tests it and says, yes sir. If that's what the confidential informant told him, that's what he should have put in the informant's affidavit. Lawrence wrote this affidavit for the informant. If the informant said he saw alleged cannabis, then Lawrence should have put that in the affidavit and let the judge decide if that's sufficient. If that's legally sufficient, he just takes the facts and he puts them down on a paper and then the judge decides whether these facts form probable cause to conduct a search for that resident. Do you think the Fourth Amendment probable cause really hinges on those technicalities, purported cannabis versus cannabis? I think the subsequent holdings, yes, yes, I do. Because the subsequent holdings in this go to, thank you, federal case law, there's a dearth of federal case law and some of them are cited in our briefs. And then Cook most recently, from the Fourth District, the most recent Illinois case in 97, 98, that's where it begins. In that search warrant, there has to be some sort of indication how this confidential informant knew that the controlled substance or the cannabis was in fact cannabis. That's the law. That's the holdings of the courts. Yes, it is required, Your Honor. And if there are no further questions? One kind of question. Counsel mentioned that the defense lawyer was cross-examining the police about prior dealings. If they knew the defendant from prior dealings, was this before or after the judge said he was going to admit the evidence of the prior conviction? That was after. Yeah, the judge had already admitted the prior conviction. He had already ruled that it was in this case. It wasn't this testimony that opened the door to that type of stuff, but it was the defense lawyers trying to deal with that evidence that the judge had already said was coming in. It came subsequently, after the judge had ruled that the evidence was admissible, that the state was going to be allowed to admit this. And what he does, what the record reflects, it's a reasonable reading of the record. I mean, there's probably different opinions on what the record precisely says. I think the defense counsel is asking, do you know this guy? Do you know him to possess cannabis? It's not that he's a big time dealer that he's out selling it on the streets or something like that. He's not opening the door to some intent. He's not questioning the intent here. It's unquestionable. And the judge had already ruled that the prior conviction was coming in. Absolutely. Any other questions? Thank you, Mr. Kovner. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel exchange.